## Sowicz v. Philadelphia Suburban Water Co.

*O'Donnell, Weiss, Mattei & Quinlan* and *Brown-back & Reynolds*, for plaintiffs.

*High, Swartz, Child & Roberts*, for defendant.

DANNEHOWER, J., April 24, 1956.—Plaintiffs in each of these four separate proceedings in equity as owners of tracts of land along or near the Perkiomen Creek, Upper Hanover Township, Montgomery County, Pa., the greater part of which have been condemned by defendant water company for the purposes of the Greenlane Dam and Reservoir, upon their separate complaints in equity have been granted a rule to show cause why a preliminary injunction should not issue to restrain defendant water company from taking possession of plaintiffs' real estate under a writ of habere facias possessionem on the grounds that each condemnation took more ground than was necessary for public purposes and therefore is illegal, unreasonable, arbitrary and void.

To each complaint and rule, defendant has filed identical preliminary objections raising questions of jurisdiction, and all four cases were argued as a unit before the court and are pending for decision. Therefore, all cases will be disposed of in this one opinion.

The preliminary objections filed in each case are that: (1) This court is without jurisdiction to determine any of the issues raised in the complaint; (2) plaintiffs have failed to exhaust their statutory remedies; (3) plaintiffs are guilty of laches; (4) at least a portion of the subject matter now conplained of is res judicata.

The factual background alleged under oath discloses that on January 11, 1951, after several hearings, the Water and Power Resources Board of the Commonwealth of Pennsylvania, issued permits to defendant Water Company to take 16,500,000 gallons of water per day from the Perkiomen Creek after impoundment in a proposed reservoir across the creek at Greenlane, Montgomery County, Pa., and also to construct a dam. Each permit required the permittee, within 12 months after the permit date, to file proof with the Water and Power Resources Board of the method and extent of its acquisition, which proof plaintiffs aver has not been filed. Defendant introduced evidence in such hearings before the board in which an elevation of 286 feet above sea level was considered as the normal water level of the reservoir and an elevation of 295 feet above sea level was considered as the highest "required and necessary elevation point" for the reservoir.

Defendant duly adopted resolutions for the condemnation of plaintiffs' real estate which included land lying beyond both the aforesaid 286-foot elevation and the 295-foot elevation. Thereafter, defendant filed petitions in this court for the approval of its bonds in condemnation, and over plaintiffs' objections

and exceptions to said bonds, the bonds were approved by the court. This court then held that on the presentation of the bonds the court did not have the power and authority to inquire into or adjudicate the question of the necessity or propriety of the condemnation at that time but only the prime facie authority to condemn, and whether the bonds were in proper form and sufficient in amount and security. Upon appeal to the Supreme Court, the appeals were quashed on December 12, 1955. Defendant in each case has attempted to obtain possession of plaintiffs' condemned real estate by issuing writs of habere facias possessionem.

Plaintiffs, as property owners, contend that they are entitled to a hearing on the question of public use, necessity for the taking and the extent or amount of the property taken and that a court of equity does have jurisdiction to restrain or control the exercise of the right of eminent domain to determine whether such right has been exercised in an unreasonable manner and not for public use and necessity. It is also contended that, if the condemnation resolutions are for an excessive amount of land, they are void ab initio.

Defendant contends that while the exercise of the legislative power of eminent domain is not above judicial review, nevertheless plaintiffs' allegations in each complaint do not aver any *facts* but only *conclusions*, that the condemnations were unreasonable, excessive, arbitrary and unnecessary for public use.

There can be no doubt that defendant water company, a public utility corporation, does have the power of eminent domain under the Act of April 29, 1874, P. L. 73. This right is not questioned. It is also clear that the Act of June 24, 1939 P. L. 842, 32 PS §636, applies only to the appropriation of water and water rights authorized by the board's permit

and land covered by said waters. The question of whether defendant has or has not filed proof with the board of the method and extent of the acquisition is a purely collateral matter in these proceedings and is one between the board and the permittee only over which the board has power to act. Next, defendant duly adopted resolutions of condemnation for plaintiffs' real estate, and plans thereof were attached to the petitions for the approval of said bonds in this court. Defendant has likewise attached plotplans and maps to the preliminary objections showing the extent of the condemnation in each case.

Plaintiffs' specific complaint in each case is that defendant has condemned approximately 100 feet of land beyond the 295 feet above sea level (as the highest required and necessary for the reservoir) limit and, therefore, has condemned an excessive amount of land not required for public use and to plaintiffs' detriment. Defendant, by way of a speaking demurrer, contends that this 100-foot wide belt of land above and beyond the highest possible water level is essential to the establishment of a water supply reservoir in order to prevent erosion and contamination, to provide access and permit proper embankment by planting and to construct such maintenance structures and other facilities as may be necessary for continued proper operation and maintenance. Plaintiffs answer that this belt of ground is excessive, unnecessary and is most valuable to them.

Although there is a presumption that defendant has exercised its power of eminent domain in a reasonable and lawful manner and the necessity for the taking is originally for the defendant, subject ultimately to the decision of a court for an abuse of discretion, and the additional belt of land taken is not very great in relation to the over-all take and the large size of the entire project, nevertheless the right of eminent do-

main is in derogation of private right and such sovereign authority is to be strictly construed, and where the property owner avers that more land was condemned than was reasonable and necessary for public use, he should not be summarily compelled to yield his property, which is jealously secured by our Constitution, until he is granted a hearing to challenge the extent, nature and necessity of that great power and subject it to the scrutiny of the courts. See Winger v. Aires, 371 Pa. 242.

It might be that the extent and necessity for such condemnations are just, reasonable and without an abuse of discretion in comparison with the entire project. And yet some engineers may determine that such condemnation is excessive, an abuse of discretion and unnecessary for public use. Until a hearing is held before a chancellor and the entire project, plans and maps are properly before the court, how can it be decided from the pleadings alone whether defendant has exercised its right of eminent domain as alleged in an unreasonable manner with a clear abuse of discretion or taken an excessive amount of plaintiffs' land which is not indispensably necessary and absolutely essential for its present and future public use and necessity?

So, in general, we hold that in condemnation proceedings, a property owner whose real estate has been totally or partially condemned by a public utility corporation has a right to be heard, entitled to at least a hearing before a court, to challenge and test for the first time and defend his property rights to determine whether the taking was excessive, was necessary for public use and whether the party exercising the power of eminent domain was guilty of an abuse of discretion.

Plaintiffs likewise contend that since the condemnation resolution took an excessive amount of their land,

that the entire condemnation of their lands is void ab initio and illegal. We understand that the record before the Water and Power Resources Board discloses that a condemnation of land up to an elevation of 295 feet above the sea level was considered as the highest required and necessary elevation point for the reservoir and dam. Before our viewers in In re Closing of Knight Road, similar testimony was presented. Since defendant has already condemned plaintiffs' land by resolution and has filed bonds approved by this court and the Greenlane Reservoir and Dam is a tremendous project involving the expenditure of millions of dollars and delay is most serious and these are actions in equity, where justness and fairness must prevail, we are bound to take a practical view of conditions, and therefore will lift our stay of proceedings and stay as to the writ of possession to enable defendant, at its own risk and discretion, to enter upon and take possession of all the condemned lands of plaintiffs up to the 295-foot sea level line in order to allow the alleged excessive take beyond the 295-foot sea level line to be litigated.

Defendant's further contentions that plaintiffs have failed to exhaust their statutory remedies, are guilty of laches and that the subject matter is res judicata are all without merit and must be overruled.

## Order

And now, April 24, 1956, for the foregoing reasons, the stay of proceedings allowed on each complaint is hereby lifted as to all condemned land of plaintiffs up to the 295-foot above sea level line, as shown on the plans, and defendant's preliminary objections in all four cases are hereby overruled and defendant shall have the right to plead over and answer in all four cases within 20 days from notice of this order.